Peck, J.,
delivered the opinion of the court:
Lemuel B. Norton represents in his petition that on, before, and after the 29th day of September, 1862, he held the rank of first lieutenant in the tenth regiment of the Pennsylvania Reserve Corps, of the United States volunteer army, and had been detailed from duty with his regiment prior to the said 29th day of September, by the order of Major General George B. McClellan for service in the signal corps, with which corps he was on duty as acting assistant quartermaster, and stationed temporarily at the signal camp of instruction, at Georgetown, in the District of Columbia ; that as such quartermaster it became and was his duty to draw and receive certain amounts of United States government funds, out of which to pay teamsters, laborers, and employes, usually belonging to the quartermaster on duty with the signal corps, and to quartermasters in general; that having made his estimates for the expenses for the months of August and September, 1862, he reported to the Quartermaster General that he required the sum of one thousand dollars, for the payment of said teamsters, &c.; he several days afterwards received a warrant, No. 2070, on the United States Treasury for the said sum, the amount of which was paid; that immediately after the receipt of the money he commenced to pay the same to the persons to whom it was due, until he paid out of the same the sum of five hundred and sixty-two dollars; that the balance of four hundred and thirty-eight dollars remained in his possession unex-pended; of this unexpended balance he placed two hundred and eight dollars in his trunk, and two hundred and thirty dollars he had about his person in a pocket-book, for immediate use, awaiting the appearance of divers of the teamsters to demand the same in payment of their dues. That the money was not deposited in bank because it was needed for immediate use; the whole amount drawn being necessary to complete the payments then due. That while he had the $230 aforesaid upon his person, he was thrown from a horse upon which he *524 was riding and was severely injured; be was tlien conveyed to his quarters, and placed on a bed, which was in a tent, and his clothes taken off his person, his pocket-book with his own money and the $230 belonging to the government remaining in the pocket of his pantaloons placed on a chair by his side. That in a short time five of his brother officers called to see him. While these officers and himself were in the tent, he bad occasion to open his pocket-hook to take from it some money, which one of the visitors took with him to procure some articles needed by the petitioner; the remainder of the money was returned to the pocket of the pantaloons, which were still by his side, where they remained until the visitor returned, who had with him some money left after haviug made the purchases, which was in about an hour’s time. When the money remaining from the purchases made was about to be placed in the pocket-book whence it had been taken, the discovery was made that the pocket-book, with the money belonging to the government and that belonging to the petitioner, was gone. Search was made throughout the tent, but the money could not be found. The officers were not searched. The money was never recovered. The petitioner avers that the money was lost without fault or neglect on his part, while in the line of his duty, at a time when he was suffering from the injuries received by his fall, and while he was unable to protect either his own money or that belonging to the government, from the thieving propensities of some of his professed friends, who had called to condole with him in his affliction. This is the narrative of the claimant, which has been substantially if not circumstantially proved.
Four of the persons who were with the claimant at the time the money was stolen have been examined as witnesses in support of his petition. Adin B. Capron says: I was present with said Norton at his quarters on the afternoon when the money mentioned in his petition was said to have been stolen. Major Norton, the petitioner, was lying in bed, having been thrown from his horse and injured, and his clothes were lying in a chair close beside the head of his bead. I had called to see him in consequence of his having been injured as before stated. Major Norton took his pocket-book from the pocket of his pantaloons, and took money out and gave some to Lieutenant D. Wonderly to get him something to eat from a' store. I did see the pocket-book and the money in it. I knew he had money belonging to the government, and that he had it in his pocket-book. I was present all the time that Lieutenant Wonderly was absent for the things. Immediately after Lieutenant Wonderly left the tent, I saw Major Norton place the *525 money back in the pocket of his pants. It was not possible for it to have been lost; it must have been stolen. I was present all the time, from the time the money was returned to the pocket of the pants until the loss was discovered. The loss was discovered by Major Norton taking the pants to put into the pocket some change brought hack by Lieutenant Wonderly. I knew how much money Major Norton had' when he met with his accident as above stated, and I counted what money he had left after that above mentioned was lost, and by this means I know how much was stolen. The sum stolen was about two hundred and thirty (230) dollars.
In answer to cross-interrogatories this witness said that the money was kept in his pocket-book in the pocket of his pants. He was usually very cautious in the keeping of his money, and commonly hid it in his bed when he slept. But at the time of the loss he had been injured by a fall, and his clothes were taken off by others and laid upon the chair; they were still in plain sight of him, and it was broad daylight.
That I was acquainted with his accounts. I knew how much money of his own he had with him, and how much money of the government. I knew by counting the money he had left, which was in his trunk, (this was government money,) and, by examining the pay-rolls, how much was stolen. I knew at the time how much money of his own he had, it being 'his regular pay, and I having been with him when he received it, but am unable to state the amount now. By making with him a careful examination and calculation, I came to the conclusion that the amount of money stolen that belonged to the government was about two hundred and thirty (230) dollars.
Four of the five persons who were present at the time of this disgraceful affair were examined, and corroborate the statements of this witness, except that none of them state the amount of the money lost so positively as Capron does.
Suspicion seems to have fallen upon one of the officers then present as being the guilty party, and he was not examined.
' Was the petitioner without fault or neglect in the care which he took of the funds intrusted to him? We think he was. He was paying the teamsters and other employés in a camp, the petitioner at the time occupying a tent. It may well be supposed that money would be as safe about his person as in any other place where he could put it, while in camp, occupying a tent. He was paying out the money from time to time, and at any time it might be called for, wherever he might *526 meet with those who were entitled to receive it; hence the excuse, if not necessity, for having it out of bank, and about his person.
He placed the public money with his own, taking equal care of both. Though unfortunate in his efforts to save either, apparently exercising as much care and prudence as his situation would permit.
It is often easy, after an event has occurred, to point out how it might have been prevented. But in a case like this, the inquiry is properly limited to the propriety of conduct anterior to the loss, so as to ascertain whether the individual may be excused, because he has exercised proper prudence and diligence under the circumstances and in the condition in which he was placed. To exact from him the utmost possible care and vigilance, without regard to the circumstances surrounding him, would he applying too harsh a rule.
We have come to the conclusion that this petitioner lost the two hundred and thirty dollars of the government funds intrusted to him in his capacity of quartermaster, in the line of his duty, and without fault or neglect, and direct a decree to be entered accordingly.